567 A.2d 671

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Max B. BASLICK, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 16, 1989.

Filed Dec. 11, 1989.

Michael M. Apfelbaum, Sunbury, for appellant.

Before CAVANAUGH, MONTEMURO and POPOVICH, JJ.

CAVANAUGH, Judge:

The present appeal is from a sentence of a fine for vehicular speeding in violation of the vehicle code. The trial court found the appellant, Max E. Baslick, guilty in a trial *de novo* after an appeal from a summary conviction. The speeding citation was issued after observation of appellant's tractor trailer by a trooper aboard an aircraft which was on aerial patrol over the Pennsylvania Turnpike.[1] Appellant argues that we should reverse the conviction because of an alleged discrepancy in the color identification of the vehicle as reported and recorded by the aerial observer and the trooper on the highway who issued the citation. The air and ground personnel maintained radio contact. Appellant fails to articulate whether his argument is that the evidence was insufficient or whether the verdict is against the weight of the evidence. We have nevertheless reviewed the record under both standards and find no merit to the appeal. The argument as to a conflict in the color description of the offending vehicle was but a single factor in the trial before the court. The court resolved all issues of credibility in favor of the Commonwealth and found that appellant's vehicle was continuously observed from the time the speeding was timed until it was stopped by the officer on the highway.

Appellant's sole citation of authority is the case of *Commonwealth v. LaPaglia*, 22 D & C 3d 28 (1981) wherein the court in an aerial surveillance speeding case held:

> Accordingly, because of the misgivings we have already expressed as to the inherent difficulties with the method of identification here used, we hold that it is so fraught with risk of innocent error that it must be scrutinized with care and received with caution before being accepted as true by the factfinder. *Commonwealth v. LaPaglia*, 22 D & C 3d, 34.

---

1. The violation is determined by measurement, (with the use of a certified stopwatch), of time elapsed while a vehicle passes between marked portions of the highway at posted mile markers.

■■■■  We disagree and see no reason for a stricter standard of proof in aerial observation speed cases. The testimony in this case from the trooper was that he was a passenger in the aircraft in the "air enforcement program" when he observed appellant's vehicle travelling at a speed noticeably greater than the rate of other traffic, thereafter he recorded the time elapsed while the truck passed between several marked (and duly certified) distance markers on the surface of the turnpike. The officer testified:

Q. While you were observing this vehicle pass over these lines, what did you do?

A. As the front of the tractor trailer combination approached the first set of lines, which was at mile post marker 270.0, and as it then crossed it, I activated my stopwatch, an electronic stopwatch which I had there in the aircraft, and permitted that instrument to continue to function until the front of that tractor trailer combination crossed over the second line. It was in the left lane throughout that period of time, and that second location was at mile post marker 270.6 eastbound.

Q. And after you made that observation what did you do?

A. As the front of its passed over the second line, I deactivated the instrument and looked at the digital readout to observe the elapsed time over that three-tenths mile.

Q. And what was the elapsed time over that three-tenth of a mile?

A. The elapsed time over the three-tenths mile was 14.9 seconds.

Q. And from that information, were you able to determine the speed at which that vehicle was travelling?

A. I knew from that elapsed time that the vehicle was worthy of continued observation in that it was a shorter elapsed time than would normally be the case with a speed of fifty-five miles per hour.

Q. And did you determine how fast the vehicle was going?

A. Yes, sir. After I had confirmed that the vehicle that I checked was subsequently pulled over by my associate, Trooper Ferry, I checked the precalculated chart to determine what was the actual rate of speed over that given distance of three-tenths mile with an elapsed time of 14.9 seconds. And using the standard scientific equation of speed is equal to the distance over the time, those two factors being known, I determined that the rate of speed was 72.4 miles per hour.

Q. The watch which you were using, what type of watch was it?

A. This was a Heuer stopwatch.

Q. And is that stopwatch authorized to be used by the Pennsylvania Department of Transportation?

A. Yes, sir, it is. It is an approved type.

The accuracy of the watch was duly certified. As to the identity of the vehicle he stated:

I was constantly aware of the vehicle that I had checked and watched it constantly and continuously until I confirmed to Trooper Ferry that it was pulled over and was the correct vehicle.

Q. So the vehicle that you timed is the vehicle that Trooper Ferry pulled over.

A. Yes, sir. Indeed, it was.

While, of course, credibility is an issue for the factfinder, we see nothing in the circumstances of these cases which would require that we adopt a more strict standard of proof or requirement of heightened scrutiny simply because the citation was issued as the result of aerial observation. To the extent that the *LaPaglia* decision requires a stricter standard of proof in cases where motor vehicle speeding prosecutions are based upon aerial observation, it is overruled.

Judgment of sentence affirmed.